UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **In re:** ) | |
| ) | No. 12 B 01898 |
| Dale Franklin, ) | |
| ) | Chapter 13 |
| Debtor. ) | |

### FINDINGS OF FACT AND CONCLUSIONS OF LAW FOLLOWING HEARING ON DEBTOR'S MOTION TO COMPEL RECEIVER UNDER 11 U.S.C. § 543 TO TURNOVER PROPERTY OF ESTATE AND WELLS FARGO'S MOTIONS TO EXCUSE COMPLIANCE WITH 11 U.S.C. § 543 AND MODIFY AUTOMATIC STAY

This matter relates to a Chapter 13 case filed by Dale Franklin ("Debtor"). Debtor seeks to have its property turned over to him from the state court appointed Receiver pursuant to 11 U.S.C. § 543. The Debtor must overcome several objections made by Wells Fargo Bank, N.A., ("Creditor"), the secured creditor that filed motions to excuse compliance with 11 U.S.C. § 543 and to modify the stay so as to allow foreclosure. Following an evidentiary hearing on these matters, the following Filings of Fact and Conclusions of Law are made and will be entered. For reasons set forth below, Debtor's motion under 11 U.S.C. § 543 will be denied, and Motions by the Creditor to excuse compliance with 11 U.S.C. § 543 and to modify stay will be allowed.

### FINDINGS OF FACT

#### Background

Some evidence was jointly stipulated to by the parties, and the rest was presented at trial.

The Debtor resides in Orlando, Florida. (Joint Stipulation of Facts, Dkt. No. 69, at 1) (*hereinafter* "Jt. Stip.") He operates rental property at 371 Yates Avenue, Calumet City, Illinois 60409 ("Property"). (*Id.*) Title to the Property lies in the Standard Bank & Trust Company of Evergreen Park, as Trustee under provisions of a Trust Agreement dated July 19, 1988 and known as Trust No. 11811 ("Trustee"). *Id.* Debtor owns the beneficial interest in the Land Trust. (*Id.*)

On January 26, 2004, the Trustee executed and delivered to Citibank, FSB, predecessor of the Creditor, a Note ("Note") in the principal sum of Four Hundred Thousand Dollars. (*Id.*) To secure the Note, the Trustee executed a Trustee Mortgage ("Mortgage") in connection with the Property on January 26, 2004, and recorded in the Office of the Cook County Recorder of Deeds

on February 9, 2004 as document number 0404003078. (*Id.*) On January 26, 2004, Debtor executed a personal Guarantee (the "Guarantee"), to further secure the note, whereby he unconditionally and irrevocably guaranteed all obligations. (*Id.* at 2) On October 15, 2010, Citibank assigned the Mortgage and Note to LSREF2 Nova Trust 2010 ("LSREF"). (*Id.*) LSREF assigned the Mortgage and Note to the present Creditor on December 10, 2010. (*Id.*)

The Note and Mortgage came into default as of October 1, 2010, for failure to make monthly payments pursuant to terms of the Note and Mortgage. (*Id.*) As a result of those defaults, the Creditor accelerated all amounts due under the Note and Mortgage, and demanded immediate payment. (*Id.*)On April 5, 2011, the Creditor filed a Verified Complaint for Foreclosure of Mortgage ("Foreclosure Action") in the Circuit Court of Cook County, Illinois ("State Court"), Case No. 2011 CH 12879. On May 11, 2011, the State Court entered an Order Appointing Receiver ("Receiver Order") appointing Edward T. Thilman ("Receiver") as Receiver for the Property. (*Id.*)

The Receiver obtained a bond in the amount of $50,000.00 and the Bond was approved by the State Court on May 25, 2011, at which time the Receivership became effective pursuant to the Receiver Order. (*Id.*)The Bankruptcy case was filed under the Chapter 13 of the Code on January 20th, 2012.

The amount of the Creditor's secured claim when the Bankruptcy Petition was filed was $385,533.59, exclusive of interest, attorneys' fees, costs and advances in connection with the Property. (*Id.*; Motion to Modify Stay Dkt. No. 14 ¶ 4) The amount of arrearage owed by the Debtor to the Creditor under the Mortgage and Note at the time of the filing of this Bankruptcy case was $112,969.84. (Jt. Stip., at 2) The Property is valued at $375,000.00 and Debtor therefore has no equity in the Property. (*Id.* at 3)

**Management by Debtor and Receiver**

1. The Property consists of a three story building with rental residential apartments for a total number of 12 units and 12 parking spots. (Joint Stipulated Ex. 12 at 1–2)

2. The Debtor's daughter, Jacquelyn Franklin, managed the Property prior to the takeover by the Receiver, and had put forth her best efforts to maintain the property in good condition, including renovating the Property in an effort to attract quality tenants. (Debtor's Proposed Findings of Fact Dkt. No. 74 ¶ 2)

3. Due to the downturn of the economy, loss of jobs for certain tenants at the Property, and the additional loans taken out to renovate the Property, there was not sufficient income generated from the Property to make the necessary mortgage payments to the Creditor towards the end of Ms. Franklin's management. (*Id.*)

4. Towards the end of Ms. Franklin's management tenure, there were 6 units that were not paying rent, an additional 2 units late on rent payments, and the leases for most of the units had not been renewed. (Tr. Vol. I 98-100, July 20, 2012)

5. Edward T. Thilman was appointed Receiver in May 2011, and has managed the Property since that time.

6. The Receiver has spent $5,000 for repairs required on the Property to obtain the Certificate of Occupancy for the building as required by law. It had not been obtained for the previous five years. (Tr. Vol. II 98, July 23, 2012; Joint Stipulated Ex. 6, at 21).

7. The Receiver has paid for any maintenance costs, tax bills, and other expenses including the first installment for the 2011 Property tax of $11,911.91. (Tr. 3; Joint Stipulated Ex. 6, at 21). $10,000 in cash remains on hand. A tax bill of $23,000 is due August 1, 2012, and the Receiver does not expect to have sufficient funds to pay it. (Tr. Vol. I 56, July 20, 2012)

8. The Receiver has evicted three tenants for non-payment of rent and will initiate eviction proceedings against another two tenants. (Tr. Vol. I 106-107, July 20, 2012)

9. Currently, the Property has seven paying tenants, two units awaiting evictions, a further two under lease to be filled with paying tenants on August 1, 2012, and one unit that is currently not in rentable state. (Tr. Vol. I 106-112, July 20, 2012)

10. The Receiver anticipates that he will be able to raise the gross income generated from the Property to about $9,000 and net income to about $4,500 by renting up to eleven units, which would be considered average occupancy for the neighborhood. (Tr. Vol. II 102, July 23, 2012)

11. The current monthly expenses are about $3,200, exclusive of Receiver's fees that amount to a total of $1,200 per month, including management and receivership fees. (Joint Stipulated Ex. 14, at 24; Tr. Vol. II 105, July 23, 2012)

12. The monthly mortgage payment owed to the Creditor under the contract exceeds $5,200, and pre-petition arrearage accumulated before the petition date of January 20th, 2012,

was $112,000. The Debtor made only one post-petition mortgage payment in February, 2012, and no other post-petition payments have been made. (Tr. Vol. II 101, July 23, 2012)

13. The Debtor has a net personal monthly income of approximately $1,500, with a gross monthly income of about $3,200. (Joint Stipulated Ex. 14, at 1)

14. The Debtor has personal assets worth $325,700 with secured and unsecured liabilities of about $351,000. (Joint Stipulated Ex. 14, at 1)

15. If the Property were turned over to the Debtor and he were able to sustain the current financial projections made by the Receiver, the total monthly amount available to the Debtor would be approximately $6,000, including both the projected net income from the Property and Debtor's personal income. This amount would not be sufficient to cover Debtor's personal expenses, and both the monthly mortgage payments and arrearage payments under a Chapter 13 Plan if one were confirmed. (Tr. Vol. II 103, July 23, 2012)

16. The Debtor anticipates that his costs and expenses for the Property would be higher than $3,200, if he were to regain control over the Property, and that he would be unable to make the necessary payments. The Debtor has stated that the reorganization Plan filed on his behalf will not work. (Tr. Vol. II 64, July 23, 2012)

17. However, Debtor hopes to bring the Property in compliance with Section 8 of the Housing Act of 1937 (42 U.S.C. § 1437 (f)), as administered by the U.S. Department of Housing and Urban Development (HUD) under the Housing Choice Voucher Program, and also with the Veterans Administration Supportive Housing Program administered by the HUD, which provide for subsidized housing for low-income persons and veterans. Ms. Franklin testified that she will not only be able to achieve certification under these laws but also find suitable tenants under their programs and increase the net income generated from the Property. (Tr. Vol. II 18, July 23, 2012) However, she did show that efforts to come under thosegovernment programswere seriously begun and likely to succeed.

## JURISDICTION

Jurisdiction lies under 28 U.S.C. § 1334 and Internal Operating Procedure 15(a) of the District Court for the Northern District of Illinois. This is a core proceeding under 28 U.S.C. § 157(b)(2)(L).

## CONCLUSIONS OF LAW

I. **Creditor's Motion under 11 U.S.C. § 543 to Excuse Compliance and Debtor's Motion to Compel Receiver**

A party seeking to excuse compliance with the requirement under 11 U.S.C. § 543(d) must show by a preponderance of evidence that the best interests of the creditors are served by permitting a custodian to retain control of the estate. *In re Falconridge, LLC*, 2007 Bankr. LEXIS 3755 at *20 (Bankr. N.D. Ill. Nov. 8, 2007). A receiver appointed by a state court is a "custodian" subject to § 543(b). *See* 11 U.S.C. § 101(11). The receiver is required to "deliver to the trustee any property of the debtor held by or transferred to such custodian, or proceeds, product, offspring, rents, or profits of such property, that is in such custodian's possession, custody, or control on the date that such custodian acquires knowledge of the commencement of the case." 11 U.S.C. § 543(b)(1). Under 11 U.S.C. § 543(d), the bankruptcy court may excuse compliance with this requirement, if "the interests of creditors and, if the debtor is not insolvent, of equity security holders would be better served by permitting a custodian to continue in . . . control of such property, and . . . if the custodian is an assignee for the benefit of the debtor's creditors that was appointed or took possession more than 120 days before the date of the filing of the petition, unless compliance with such subsections is necessary to prevent fraud or injustice." 11 U.S.C. § 543(d)(1)–(2).

A number of factors can be used to determine whether the creditors' best interests would be served by permitting the receiver to retain control of the debtor's estate beyond the filing of the Bankruptcy case. The most relevant factors are the following:

(1) The likelihood of reorganization, and whether funds held by the receiver are required for reorganization;

(2) Whether there were instances of mismanagement by the debtor;

(3) Whether turnover would be injurious to creditors;

(4) Whether the debtor will actually use the property for benefit of its creditors;

*See Falconridge*, 2007 Bankr. LEXIS 3755, at *21–22; *In re Dill*, 163 B.R. 221, 226 (E.D.N.Y. 1994); *Lizeric Realty*, 188 B.R. 499, 506–507 (Bankr. S.D.N.Y. 1995); *Northgate Terrace*

*Apartments,* 117 B.R. 328, 332 (Bankr. S.D. Ohio 1990); *In re Poplar Springs Apartments,* 103 B.R. 146, 150 (Bankr. S.D. Ohio 1989); *In re WPAS, Inc.,* 6 B.R. 40, 43 (Bankr. M.D. Fla. 1980).

### A.  There is No Serious Possibility of Reorganization

There must be a "reasonable possibility of a successful reorganization within a reasonable time." *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs.,* 484 U.S. 365, 376 (1988). The debtor must present some evidence that a successful reorganization is possible within a reasonable time. *See In re Apex Pharms.,* 203 B.R. 432, 440 (N.D. Ind. 1996); *In re Cadwell's Corners Partnership,* 174 B.R. 744, 761 (Bankr. N.D. Ill. 1994). In the case at hand, the Debtor has not presented any convincing evidence that a successful reorganization is in prospect.

The value of the Property is $375,000.00, while the amount owed to the Creditor is $385,533.59. Consequently, the Debtor has no equity in the Property. The Debtor has even admitted that he will be unable to make the required monthly payments for the mortgage and the arrearage, and that the plan does not work economically. Furthermore, Ms. Franklin's plans to bring in a certain type of tenants based on compliance with certain government programs and regulations are not persuasive. The Debtor has shown a lack of past effort to establish any such compliance. The Property even lacked a Certificate of Occupancy before the Receiver obtained one, and Debtor failed to make any efforts to effect the necessary repairs to obtain that Certificate for five years. There is no evidence as to the Property's possible compliance with Section 8 of the Housing Act or other regulations applicable to the Debtor's plans. Finally, there is a lack of any clear evidence beyond spoken testimony, such as projected income and expenses, that such compliance will provide sufficient tangible benefits to the Property and the Creditors. In short, the Debtor lacks a viable plan to reorganize.

Furthermore, there are inadequate funds available or in prospect for reorganization: There is an outstanding real estate tax against the Property of $23,000, with only $10,000 in cash at hand; the Property does not yet generate sufficient monthly income to meet monthly mortgage obligations; and Debtor's private income is not sufficient to make up the shortfall in the net

income from the Property and the monthly mortgage obligations. Consequently, funds and income are lacking to enable reorganization.

### B.    There is Some Evidence of Financial Mismanagement by Debtor.

There are several instances of mismanagement by the Debtor. He has failed to collect rents from some tenants and had not evicted a single non-paying occupant. None of the leases had been renewed, and new leases were not obtained. The Debtor also failed to obtain a Certificate of Occupancy for more than five years, which led to additional expenses incurred by the Receiver. Additionally, significant additional loans were taken out by the Debtor to pay for the renovations to the Property despite lack of a viable plan to make the regular monthly mortgage payments in addition to increased payments due under the new loans.

The Debtor does receive credit for maintaining the Property generally in good condition, with some renovations. Nonetheless, overall the Debtor financially mismanaged the Property.

### C.    Turnover by the Receiver Would Injure Debtor's Creditors.

The turnover will be injurious to the Creditors, and the Debtor will be unable to provide any benefit to them. While it seems highly likely that the Debtor, if he regained possession of the Property, would attempt to maintain it in good condition, it is not likely that he would be able to sustain sufficient rent-paying tenants in the building to enable him to meet his financial obligations. In fact, the Debtor has admitted that the reorganization Plan on file will not work as he will not be able to make the required payments.

A Receiver appointed by a state court to manage real property has a duty to "manage the mortgaged real estate as would a prudent person, taking into account the effect of the receiver's management on the interest of the mortgagor," with "full power and authority to operate, manage and conserve such property *See* 735 ILCS 5/15-1704(b)-(c). A private business owner may choose to engage in risky behavior to increase profitability, enter new areas of business or to implement new strategies, but the Receiver cannot do so, especially if "doing so would be contrary to the conservation and management of the property." *In re Falconridge, LLC*, 2007 Bankr. LEXIS 3755 at *28–29 (Bankr. N.D. Ill. Nov. 8, 2007). The Receiver in the instant case

has no reason to engage in risky behavior that would be contrary to proper management of the Property. If the Property remains in the hands of the Receiver, it is highly likely that he will continue engage to in good business practices and continue with his plan to bring the Property into a financially stable situation suitable for meeting the financial obligations required by the mortgage and arrearage. The Debtor will be unable to provide any benefit to the Creditors while the Receiver will be more likely to establish a financially sound condition for the Property. Any turnover or responsibility will therefore be injurious to the Creditor.

For the foregoing reasons, Creditor's Motion to Excuse Compliance with 11 U.S.C. § 543 will be granted, and the Debtor's Motion to Compel the Receiver to Turnover under 11 U.S.C. § 543 will be denied.

## II.     Creditor's Motion to Modify Automatic Stay

To be granted relief from the automatic stay under 11 U.S.C. § 362(d), a creditor must demonstrate a lack of "adequate protection of an interest in property of such party in interest . . . the debtor does not have an equity in such property; and such property is not necessary to an effective reorganization." 11 U.S.C. § 362(d)(1)-(2). To defeat the motion, a debtor in Chapter 13 must have filed a "plan of reorganization that has a reasonable possibility of being confirmed within a reasonable time; or [have] commenced monthly payments" to secured creditors in amounts equal to "interest at the then applicable non-default contract rate of interest on the value of the creditor's interest in the real estate." 11 U.S.C. § 362(d)(3)(A)-(B). The debtor must also show that he can adequately protect the creditor's interest. *See Thompson v. GMAC, LLC*, 566 F.3d 699, 704 (7th Cir. Ill. 2009).

### A.     The Debtor Cannot Provide Adequate Protection to Creditor.

The Debtor has not provided adequate protection for the Creditor's interests and is unable to do so. The Mortgage and Note have been delinquent since October, 2010. The amount of Creditor's secured claim at the filing of the instant Bankruptcy Petition was $385,533.59. The amount of the arrearage owed under the Mortgage and Note at the time of the Petition is $112,969.84. The Debtor has made only one monthly payment to the Creditor since the Petition was filed. There is a continual increase in indebtedness of the Debtor to the Creditor in relation

to the Property. (Motion to Modify Stay ¶ 7B) Further, the Debtor has failed to make any payments into the Chapter 13 Plan, which the Creditor claims constitutes unreasonable delay to the prejudice of creditors in violation of 11 U.S.C. § 1307(c)(1). (*Id.* ¶ 7C)

As previously discussed, the Debtor has no equity in the Property as the amount owed on the Mortgage and Note exceeds the value of the Property. There is insufficient cash at hand to cover any mortgage or arrearage payments, tax bills, and required maintenance expenses. The Debtor admits that he will unable to make any payments under the mortgage and arrearage to the Creditor if he were brought into possession and control of the Property. Therefore, adequate protection for the Creditor's interests in the Property is lacking.

### B.     The Debtor Has Not Filed a Viable Reorganization Plan or Commenced Required Payments to Creditor

The Debtor has not presented a viable plan to effectively reorganize the Property under Chapter 13 protection, as discussed previously. There is no evidence of efforts or plans on the part of the Debtor to continue the financially sound operation established by the Receiver or to establish his own management that would enable him to meet his financial obligations under the Mortgage and Note, if the Property were turned over to him. He even admits he will be unable to meet his Plan obligations. He has made only one payment to the Chapter 13 Trustee since filing of the Bankruptcy Petition, and has failed to make the required further monthly Plan payments. There is no evidence of viable plans or ability to make future payments. Therefore, Debtor has not presented a reorganization plan that is likely to be confirmed, and he has not made sufficient payments into the Chapter 13.

### C.     The Property Is Not Necessary For Reorganization.

No effective reorganization is a prospect, the Property is not necessary to an effective reorganization, and there is no possibility of reorganization. There is no equity in the Property. The Debtor does not have a viable way to raise revenues from the Property to an extent that would enable him to make payments under the Plan, and the Mortgage and Arrearage. The Debtor failed to manage the Property in a financially sound manner before the Receiver was appointed to such an extent that the net income from the Property has fallen to unsustainably low levels. He failed to collect rents from all his tenants, and did not evict or otherwise penalize non-

paying tenants. He then increased his indebtedness by undertaking renovations to the Property without a feasible repayment plan. It is unlikely that he will be able to reorganize the financial situation of the Property in the near future to the benefit of the Creditors. The Debtor admits that he will be unable to meet payments required under the Note and Mortgage if he were given control of the Property. He has failed to show that an effective reorganization is in prospect if the Property were transferred back to his control.

For these reasons, the Creditor's Motion to Modify Automatic Stay will be granted.

## CONCLUSION

By separate orders, Debtor's Motion for Turnover under 11 U.S.C. § 543 will be denied, and Creditor's Motion to Excuse Compliance with 11 U.S.C. § 543 and its Motion for Relief from Automatic Stay will each be allowed.

ENTER:

Jack B. Schmetterer
United States Bankruptcy Judge

Dated this ___ day of August, 2012.